FRANCIS E. JENNINGS, appellee, v. FARMERS MUTUAL INSURANCE ASSOCIATION, appellant.

No. 52447.

(Reported in 149 N.W.2d 298)

280

MARCH 7, 1967.

Keith A. McKinley, of Osage, and Larson & Carr, of Charles City, for appellant.

Alfred A. Beardmore and T. A. Beardmore, both of Charles City, for appellee.

LARSON, J.—This is an action on a contract of insurance issued by the Farmers Mutual Insurance Association to Francis E. Jennings which inter alia insured plaintiff's dairy herd from loss occurring as a result of vandalism and malicious mischief. The jury returned a verdict for plaintiff in the sum of $5020.75 and, when defendant's motions for judgment notwithstanding the verdict and for a new trial were overruled, it appealed.

Appellant assigns as error (1) that defendant's motions for a directed verdict should have been sustained (2) that its motion for judgment notwithstanding the verdict was erroneously overruled and (3) that the court erred in failing to grant its motion for a new trial. Actually, the sole issue before us is whether the plaintiff sustained his burden to prove that the injury and damage suffered was the result of vandalism and malicious mischief as defined in his policy of insurance. It involves primarily a fact question of causal connection. The trial court thought a jury issue had been generated and we agree.

■ I. Our function in this review is not to weigh the evidence, but to decide whether there is substantial evidence from which a jury could find for the plaintiff, and in so doing we must view the evidence most favorable to the prevailing party below. Ritland v. Security State Bank, Radcliffe, 257 Iowa 21, 131 N.W.2d 464, and citations; rule 344(f)(1), Rules of Civil Procedure.

On March 22, 1964, Mr. Jennings purchased a five-year policy of insurance from the Farmers Mutual Insurance Association of Osage, Iowa, which covered loss by fire, windstorm and extended coverage. Among its provisions was the following: "PROVISIONS APPLICABLE ONLY TO VANDALISM AND MALICIOUS MISCHIEF: The term Vandalism and Malicious Mischief as used herein is restricted to and includes only willful or malicious physical injury to or destruction of the described property."

In April 1965 a number of plaintiff's cows were poisoned when they licked paint out of two open five-gallon cans which had been placed upon an iron grating next to a line fence between plaintiff's pasture and his neighbor's yard. Seventeen died and others could not be milked for some time. There is no dispute as to the amount of plaintiff's damage nor as to how the

cattle obtained the poison. The nub of this controversy is whether plaintiff's circumstantial evidence was sufficient to sustain a finding that the person or persons who placed the cans of paint at the fence did so willfully or maliciously, and a finding that plaintiff had carried the burden assumed by his pleadings.

II. One who pleads and relies upon the affirmative of an issue, of course, must carry the burden to prove it. Ritland v. Security State Bank, Radcliffe, supra; In re Estate of Kneebs, 246 Iowa 1053, 70 N.W.2d 539; Race v. Iowa Electric Light and Power Co., 257 Iowa 701, 134 N.W.2d 335; rule 344(f)(5), Rules of Civil Procedure.

In paragraph 3 of his petition plaintiff alleged, "That sometime immediately prior to the 19th day of April 1965 * * * a person or persons unknown to this plaintiff placed two five-gallon cans of paint immediately adjacent to and nearly touching the pasture fence of this plaintiff, said pasture being where the plaintiff was pasturing his cows. That said cans of paint were placed on a register or grating and were without covers. and said paint cans were placed there by the person or persons with the willful intent to injure the plaintiff's cattle, and that such act constituted vandalism and malicious mischief as defined in the contract of insurance."

There appears to be little or no dispute as to the contents of the cans or where they were found after the injury was discovered. It is clear the consumption of their contents by the cows caused the loss. What is not clear is when and why these cans of paint were placed so close to the fence of the pasture in which plaintiff had his cattle. Evidence as to these important if not ultimate facts was purely circumstantial. Plaintiff introduced no one who said he saw the open cans placed on an iron grate so close to the fence you could not get your hand between the cans and the lower strand of the three-strand barbed-wire fence. He produced no one who testified as to the intention of such person or persons, but relies upon proof of circumstances from which the jury could find they were so placed with an intent to injure or destroy plaintiff's cattle.

III. We have often said, in order to establish a proposition by circumstantial evidence, the evidence must be such as

to make the claimant's theory reasonably probable and not merely possible, and more probable than any other theory based on the evidence, but the evidence need not exclude every other possible theory. State Farm Mutual Automobile Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449; Doane v. Farmers Cooperative Co., 250 Iowa 390, 94 N.W.2d 115, 81 A. L. R.2d 128; Soreide v. Vilas & Company, 247 Iowa 1139, 78 N.W.2d 41.

The trial court was convinced that if the jury believed these cans of paint had been opened and placed near this fence at this spot about the time or after the cattle had been turned into that pasture, it could adopt the theory that it was done with an evil intent and properly find the intent to injure was more probable than any other theory, including the one propounded by defendant that these cans were inadvertently placed there the previous fall by the neighbor.

Plaintiff's testimony was given by himself and his veterinarian. About five days after plaintiff turned his cattle into this pasture he observed several ailing cows. He called his veterinarian and, when it appeared the cows were obtaining a poison, a search for the source was made. These paint cans were discovered near the fence line about 12 feet from the corner of a tin building on the neighbor's lot, behind which there was some junk and trash. Both men said the paint cans had no lids, and none was seen in the vicinity, that the paint was good and appeared usable with little or no dirt or water in the cans, and that they were so close to the fence you could not get a hand between them and the lower strand of three-strand barbed-wire fence.

The plaintiff testified he had been over this area many times in the past months spreading manure, and the last time only a week before the cattle had been turned into this pasture, that two days before he had examined this fence, especially noting this spot because kids had in the past crawled through it there. He testified at those times he did not see any cans of paint near the fence. Plaintiff maintains this is substantial evidence of the fact that they were not in this spot when the cattle were turned into the pasture, that it permits an inference that someone there-

after placed the cans where they were found and removed their covers, and that the condition of the paint clearly shows it had not been there over the winter months.

■ IV. The basic distinction between direct and circumstantial evidence is that in direct evidence the witnesses testify of their own knowledge as to the ultimate facts to be proved, while circumstantial evidence relates to instances where proof is given of facts and circumstances from which the finder of fact may infer other connected facts which reasonably follow, according to the common experience of mankind. 20 Am. Jur., Evidence, section 270, page 258. The jury here was correctly told, "Circumstantial evidence is that which tends to show an alleged fact or facts, in issue, by proof of collateral facts from which it may be reasonably and logically deduced that the alleged ultimate fact exists which is thus sought to be established."

Appellee contends he established by sufficient substantial evidence the following collateral facts: that the cans of paint with covers removed were placed so close to the fence in an area where plaintiff's cattle usually gathered that the person or persons must have known the cattle would get into it; that the cans were placed on a grate which would tend to prevent their overturn, so that they became self-feeders; that the paint was in good shape, usable and not full of dirt and debris, as it would have been had the cans been open for any great length of time; and that it was well known that white lead and paint were deadly poisons to cattle and were tempting to these animals.

From these proven items appellee contends a fair inference arises that the person or persons, unknown to him, knew this was a deadly poison for cattle, knew the cattle gathered at this place, knew it was necessary to place the cans on a solid base, near the fence but outside it, to keep the cattle from spilling it, and had recently removed the lids on the paint cans with the intent to injure or destroy the cattle just moved into that pasture.

■ V. Intent, it is said, is an act or emotion of the mind and is seldom, if ever, capable of direct or positive proof. It is, therefore, usually determined by such just and reasonable deductions from acts and facts proven as the guarded judgment of reasonably prudent and cautious men would ordinarily draw

therefrom. The jury was so instructed here and was also told that plaintiff relied upon circumstantial evidence to establish the necessary or ultimate fact that the person or persons who placed the cans of paint near the plaintiff's pasture fence did so with the intent to injure or damage his cattle.

The jury, in answer to a special interrogatory, "Do you find that the person or persons who placed the cans of paint next to plaintiff's pasture fence did so with the intent to injure or damage plaintiff's cattle?" replied "Yes."

■ Although the evidence is not strong, and is something less than conclusive, we cannot say it was so weak that this submission amounted to permitting the jury to speculate or arrive at a verdict based wholly upon conjecture. We think the evidence does generate a jury question as to the evil intent of the person or persons who placed the open paint cans at that place.

■ VI. Appellant contends the testimony of a neighbor, his family, and a company adjuster refutes the inference of an intentional or malicious act in placing these cans next to the fence line. The neighbor Thelmer Miller testified that he had taken these cans of paint from his basement into the yard for mixing the previous fall, that all attempts to mix the paint were unsuccessful, and that in discarding the cans he placed them on a grate in the vicinity of the fence. He said, "There was no particular reason that I had in setting it there in that particular place." His son testified that when they took the paint from the basement, "We took the cover on the full pail with us. I believe we replaced the cover on the full one." Mrs. Miller testified, "I recall that they replaced the covers on the paint." Miller was certain he did not place the cans at that place with a "willful intent to injure Mr. Jennings' cattle", but claimed his intention was to move them out of the way of the children and later take them to the dump. While it is not clear just where he moved these cans, he said the last time he saw them was in the fall of 1964.

The defendant's adjuster, Robert Goreham, testified he examined the premises after being notified of the loss on April 21, 1965. He took pictures which were introduced in evidence, but said the cans had been moved from the fence line when he arrived.

At the time of his inspection he said there was dirt in the paint, "just ordinary dirt", that he noticed no leaves in the cans, but in one can there was some water.

Appellant contends this unrefuted evidence proves the cans were inadvertently placed near the fence and refutes the inference that it was done with an intent to injure or damage plaintiff's livestock. Whether the jury believed or disbelieved this testimony, we do not know. However, this testimony does not compel a finding that some other person or persons did not move and open the cans after the cattle were brought to this pasture in April 1965. It is clear the weight or truthfulness of this testimony was for the jury.

Evidently the jury did not believe the inadvertence theory and was convinced the evidence of willfulness of the person or persons who made this paint available to plaintiff's cattle had been established. We cannot disturb that determination under this record, as our concern is primarily with the sufficiency of all the evidence to sustain the court's ruling on defendant's motions to direct. Clark v. Sherriff, 247 Iowa 509, 74 N.W.2d 569.

VII. Appellant contends there was no evidence introduced tending to prove malice on the part of the person or persons who placed the paint cans in this fence line and that the court failed to apply the proper definition of vandalism and malicious mischief to plaintiff's evidence. It cites several cases for the proposition that malice is an essential ingredient of malicious mischief. It relies principally upon our recent case of Larson v. Fireman's Fund Insurance Co., 258 Iowa 348, 139 N.W.2d 174. This also was an action against an insurer to recover the value of destroyed livestock (turkeys) on the theory that their death was caused by malicious mischief when an airplane flew over their enclosure at 150 to 200 feet. We held therein the insurer was not liable under its policy where there was no evidence that the unidentified pilot was bent on mischief against the party and was prompted by an evil mind. That policy contained no definition of malicious mischief and we were forced to resort to common-law and statute definitions to determine the ingredients and proper elements to be proven. State v. Shaffer, 202 Iowa 958,

211 N.W. 230; State v. Waltz, 158 Iowa 191, 139 N.W. 458; State v. Leslie, 138 Iowa 104, 105, 115 N.W. 897, 128 Am. St. Rep. 160. In Leslie, supra, we applied the criminal law definition of the word "malicious" and said, " * * * malicious mischief, which is made punishable as a crime, is not mischief or injury done to the property through mere wantonness, or *a mere intent to injure the property*, but is mischief or injury inflicted with the malicious intent to injure some person, ordinarily the owner of the property." (Emphasis supplied.)

In the case at bar we need not search for the meaning of malicious mischief as used in the policy, or search for the elements upon which proof is required. The policy defines it as "willful or malicious physical injury to or destruction of the described property."

■ As pointed out in Clark v. Sherriff, supra, 247 Iowa 509, 515, 74 N.W.2d 569, 573, "willfully" is by legal lexicographers usually or most frequently defined as "intentionally"—"knowingly"—distinguished on the one hand from accidentally and on the other from maliciously. Also see Claus v. Chicago G. W. Ry. Co., 136 Iowa 7, 11, 111 N.W. 15, 16; Werner v. Flies, 91 Iowa 146, 149, 59 N.W. 18, 19; Koonz v. Hempy, 142 Iowa 337, 340, 120 N.W. 976; annotation IIIc, 111 A. L. R. 79, 85. The conclusion generally reached is that an intentional act is ordinarily willful, and we adopt that meaning here.

■ The court properly instructed the jury that if it found the person or persons intended to place those open cans where cattle would get the paint, and they did so to their injury, the willful requirement of the vandalism and malicious mischief was met. We agree. Under the definition in the policy it was unnecessary to show this act was done with malice toward Mr. Jennings. Even if this were not so, we believe the evidence here would sustain an inference of malice toward Jennings, as it would permit a finding that the paint was placed at the usual place his cattle congregated immediately after they were turned into that pasture for the purpose of injury to plaintiff and his cattle.

VIII. Having found plaintiff's collateral evidence sufficient to raise an inference of willful physical injury to the property

described in the policy, and that the court did not err in overruling defendant's motions to direct, the judgment rendered below must be and it is affirmed.—Affirmed.

All JUSTICES concur except MASON, J., who takes no part.